## STATE v. LaMOTTA.

Circuit Court, Dade County, Criminal Appeal, Division One.

November 15, 1957.

L. J. Cushman, Miami, for appellant.

Richard E. Gerstein, State Attorney, and Glenn C. Mincer, Ass't. State Attorney, for appellee.

Before GRADY L. CRAWFORD, PAT CANNON and ROBERT H. ANDERSON, Circuit Judges.

PER CURIAM.

Jake LaMotta appeals from the judgment of the court of crimes of Dade County whereby he was convicted on two counts for violating section 796.07, Florida Statutes, prohibiting prostitution. The statute makes it unlawful—

> (a) To keep, set up, maintain or operate any place, structure, building or conveyance for the purpose of lewdness, assignation or prostitution.

(b)   To offer, or to offer or agree to secure, another for the purpose of prostitution, or for any other lewd or indecent act.

(c)   To receive, or to offer or agree to receive, any person into any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or to permit any person to remain there for such purpose.

(d)   To direct, take or transport, or to offer or agree to take or transport, any person to any place, structure or building, or to any other person, with knowledge or reasonable cause to believe that the purpose of such directing, taking or transporting is prostitution, lewdness or assignation.

\*   \*   \*

(a)   To offer to commit, or to commit, or to engage in, prostitution, lewdness or assignation.

(b)   To solicit, induce, entice or procure another to commit prostitution, lewdness or assignation with himself or herself.

(c)   To reside in, enter or remain in, any place, structure or building, or to enter or remain in any conveyance, for the purpose of prostitution, lewdness or assignation.

(d)   To aid, abet or participate in the doing of any of the acts or things enumerated in subsections (2) and (3) of this section.

The counts of the information upon which LaMotta was convicted charged that he (1) "did willfully, knowingly, and unlawfully keep, set up, maintain and operate for the purpose of lewdness and assignation, a place, structure and building located at 2300 Collins Avenue, City of Miami Beach, and that he (4) "did willfully, knowingly and unlawfully aid and abet a certain female, to-wit: Doris Ann Bridgmon, to offer to commit, or to engage in prostitution, lewdness or assignation." He was sentenced to serve six months at hard labor in the Dade County jail and to pay a fine of $500, and in default of the payment of the fine, to be confined for an additional 100 days.

We have carefully read the briefs and the transcript. The state's principal witness was Doris Ann Bridgmon. She testified substantially as follows—

I arrived in Florida from Alabama about October 7, 1956. I lived with my father under the name of Mr. and Mrs. Bridgmon. I am acquainted with a party by the name of Florence Balsam and with a party by the name of James DeFlorio. I am also acquainted with a party by the name of Jake LaMotta. I see him in the courtroom and identify him. I first met the defendant, Jake LaMotta, at his bar on October 27th. I went over to the Beach that night. I got over there with Jim DeFlorio. Upon arriving at the Beach we went to Flo's apartment. Flo, her daughter, her son and another man were

there. We stayed at the apartment about half an hour. Then we (Flo, her daughter and I) walked to Jake LaMotta's bar. It is approximately five blocks. We got there about ten o'clock. Upon arrival, Flo seated her daughter and I (sic) at the table and we ordered our drinks. Flo left us. We were there about fifteen minutes before we saw the defendant, Jake LaMotta. He was at the table at the time. I first saw him with Flo and another man. I met Jake LaMotta at that time. Flo introduced us.

Then follows the narration of the incident by Doris being kissed by LaMotta which is of little, if any, significance.

He (LaMotta) introduced me to the man he was with. He told the man this was my first time for anything of that sort. The man said he could break me in. The man and I seated ourselves at the table. We had already ordered our drinks. We danced a couple of numbers and left. We went back to the apartment house where Flo lives. Apartment 15. We went to apartment 8. I got in with a key that Flo had given me. The man Jake had introduced me to was with me. We remained in this apartment about twenty minutes. We had an unnatural act. He went down on me. I received $20— two tens—for this act. After I got the money we dressed. He carried me back to the bar. After I arrived at the bar he let me out at the red light by the bar and I went back in by myself. Upon my arrival I met Flo. I told her. She asked how I done and I told her. Upon my arrival back at the bar I saw the defendant, Jake LaMotta. He came over to the table where I was sitting. He asked me how I was doing. This conversation took place at the table. I told him I felt O.K. I left the table and went back to the bar. I sat there and drank until Flo called back. Flo wanted to introduce me to some more men. I was also in the ladies' rest room and in the storage room. I was in the storage room with Jake. He asked me how I was doing. He asked me how I had made out and had Flo told me—discussed what I should do. I told him yes. I had done pretty good on my first one. I left the bar once more that night after the first time. I don't know the name of the man with whom I left. We went back to the same apartment that I had first gone to and the same act took place—the unnatural act. He went down on me. We remained in the apartment about twenty minutes. I received $10. Following that he carried me back to the bar and let me out at the red light same as before. I went back into the bar. Jim DeFlorio was waiting for me.

This evidence, we think, if believed, is amply sufficient to sustain the conviction.

In the course of a trial of this kind the judge is called on to make a large number of rulings, particularly where it is as vigorously

contested as was this one. Some of them are almost bound to be technically erroneous. Section 924.33 provides—

> *"When judgment not to be reversed or modified.*—No judgment shall be reversed unless the appellate court after an examination of all the appeal papers is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant."

We cannot say that we are of the opinion that error was committed by the trial judge which injuriously affected the substantial rights of the appellant. The judgment is, accordingly, affirmed.